**Norman Lee BRADLEY, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 899–83.**

Court of Criminal Appeals of Texas, En Banc.

Feb. 27, 1985.

Wally Bowman, Irving, for appellant.

Henry Wade, Dist. Atty, Kathi Alyce Drew, R. K. Weaver, Andy Anderson and Mary Ludwick, Asst. Dist. Attys., Dallas, Robert Huttash, State's Atty. and Alfred Walker, First Asst. State's Atty., Austin, for the State.

## OPINION ON DISCRETIONARY RE-VIEW GRANTED ON MOTION OF THE COURT

CLINTON, Judge.

Appellant was prosecuted for the offense of murder and convicted by a jury of the

"lesser included offense" of voluntary manslaughter. The jury also found two enhancement paragraphs to be true, and appellant's sentence was assessed at mandatory life imprisonment pursuant to V.T. C.A. Penal Code, § 12.42(d), prior to amendment in 1983. The Dallas Court of Appeals affirmed the conviction in an unpublished opinion.

■ V.T.C.A. Penal Code, § 19.04 has been made to wear a number of different hats. The Legislature has designated voluntary manslaughter as an offense in its own right. *Id.,* § 1.03(a), provides that "[c]onduct does not constitute an offense unless it is defined as an offense by statute...." Since § 19.04(a) begins: "A person commits an *offense* ...," it must be concluded that the Legislature intended the conduct set out therein to constitute an indictable offense, of which every element must be proven beyond a reasonable doubt to justify conviction. One of those elements is that the accused "caused the death under the immediate influence of sudden passion arising from an adequate cause."[1]

In the context of a prosecution for murder, however, the Court has taken the "sudden passion" element and transformed it so that it "is not an element of voluntary manslaughter, but is instead in the nature of a defense to murder that reduces that offense to voluntary manslaughter." *Braudrick v. State,* 572 S.W.2d 709, 710 (Tex.Cr.App.1978). Thus, "sudden passion" became a defensive issue, and voluntary manslaughter, *sans* the sudden pas-

sion "element," became a lesser included offense of murder. This construction has given rise to a number of conceptual advantages, but not without some degree of "legal contortion." See *Daniel v. State,* 668 S.W.2d 390 (Tex.Cr.App.1984) (Miller, J., concurring). We granted review on our own motion in this cause with a view to straightening out some of the contortion.

Specifically, we granted review to determine whether the trial court erred in instructing the jury on voluntary manslaughter in view of appellant's timely objection at trial that the evidence did not raise it. We also granted review to address the related question of whether voluntary manslaughter is properly to be considered a lesser included offense of murder.

### I.

■ We begin with the observation that the Court in *Braudrick* erred when it interpreted "sudden passion" to be "in the nature of a defense to murder ..." It has not been generally regarded a defense in this State. See *Daniel v. State,* 668 S.W.2d at 395 and 399–400 (Teague, J., and Miller, J., respectively concurring). And there is nothing in the penal code or in the code of criminal procedure remotely suggesting that the Legislature intended it to be one. While we understand the reasoning behind that construction, finding that in some circumstances voluntary manslaughter may be a lesser included offense to murder would have sufficed.[2] Such is our holding today.

---

**1.** Hereinafter in this opinion we will use the phrase "sudden passion" to denote "under the immediate influence of sudden passion arising from an adequate cause."

V.T.C.A. Penal Code, § 19.04(a), (b) and (c) read:

"(a) A person commits an offense if he causes the death of an individual under circumstances that would constitute murder under Section 19.02 of this code, except that he caused the death *under the immediate influence of sudden passion arising from an adequate cause.*

(b) 'Sudden passion' means passion directly caused by and arising out of provocation by the individual killed or another acting with

the person killed which passion arises at the time of the offense and is not solely the result of former provocation.

(c) 'Adequate cause' means cause that would commonly produce a degree of anger, rage, resentment, or terror in a person of ordinary temper, sufficient to render the mind incapable of cool reflection."

(All emphasis is supplied throughout by the writer of this opinion unless otherwise indicated.)

**2.** In the common law "the presence or absence of the heat of passion on sudden provocation ... has been ... the single most important factor in determining the degree of culpability

## II.

The State contends that both of the questions set out *ante* have been addressed and resolved in *Braudrick v. State*, supra, and *Paige v. State*, 573 S.W.2d 16 (Tex.Cr.App. 1978), and urges that we leave the holdings of those cases intact.

The *Paige* Court reasoned:

"In *Braudrick v. State*, [supra] it was held that acting 'under the immediate influence of sudden passion arising from an adequate cause' is not an element of voluntary manslaughter, *but is instead in the nature of a defense to murder* [3] that reduces that offense to the lesser included offense of voluntary manslaughter. Therefore, the State need not prove such influence beyond a reasonable doubt to establish voluntary manslaughter.

Since the evidence here was sufficient to prove murder, the greater offense, it was necessarily sufficient to prove voluntary manslaughter, the lesser included offense. Cf. *Neely v. State*, 571 S.W.2d 926."

From this language the State argues that, regardless of whether sudden passion is raised by the evidence, so long as the evidence supports a conviction for murder under V.T.C.A. Penal Code, § 19.02,[4] a charge and conviction on the lesser included offense of voluntary manslaughter is allowable. This is so because proof of a greater offense will sustain a conviction for a lesser included offense. See also *Daniel v. State*, 668 S.W.2d 390 (Tex.Cr.App.1984).

The problem with the State's argument is that it assumes that voluntary manslaughter may be considered a lesser included offense in every murder case. This assumption does not logically follow from the Court's reasoning in *Braudrick v. State*, supra.

In *Braudrick* the Court stated:

"Sec. 19.02, supra, does not expressly require proof that the accused was not acting under the immediate influence, etc. *This element is implied, and its proof is required, only where the evidence raises the issue that the accused was acting under such an influence.* Thus, it can be seen that in a case where murder is charged and the statutory elements (as distinguished from the implied element) are proven by the State the jury should be charged on the statutory elements as stated in the facts alleged in the indictment. Only if the evidence raises the issue of voluntary manslaughter as a lesser included offense (see Art. 37.09(1), V.A.C.C.P.) must the implied element be charged.

\*     \*     \*     \*     \*     \*

The distinguishing feature between murder and voluntary manslaughter is not a fact that must be proven beyond a

---

attaching to an unlawful homicide." *Mullaney v. Wilbur*, 421 U.S. 684, 696, 95 S.Ct. 1881, 1888, 44 L.Ed.2d 508 (1975). Texas substantially followed the common law until replacing it with the concept of murder without malice in Acts 1927, 40th Leg., ch. 274, p. 412, § 3b, codified as article 1237c, P.C. 1925, as amended. That development neither restored the law of manslaughter nor created two offenses—one of murder and one of murder without malice. *Stephens v. State*, 125 Tex.Cr.R. 397, 68 S.W.2d 181, 187 (1934). "[U]nder the law as it presently exists, there are no degrees of the crime of murder. Murder without malice is not a degree of that crime but is murder committed under the influence of sudden passion arising from adequate cause, for which the Legislature has limited the punishment." *Rodriguez v. State*, 150 Tex.Cr.R. 526, 202 S.W.2d 940, 942 (1947). Of course, § 19.04 does reinstate voluntary manslaughter as an offense, and basically as it

had first been defined in Old Code (1856) articles 594–597. See Practice Commentary to § 19.05. Then, Old Code article 631 expressly provided that murder included manslaughter, and codes of criminal procedure continued to do so, albeit in somewhat different terms, see article 695, C.C.P. 1925, and former article 37.-09, until rewritten as a conforming amendment to the new penal code. See Historical Note to Article 37.09, V.A.C.C.P., and also 4 V.T.C.A. Penal Code 370.

3. Which concept we now expressly disapprove, see I. *ante.*

4. The indictment in this cause alleges murder under § 19.02(a)(1), which reads:

"(a) A person commits an offense if he:
(1) intentionally or knowingly causes the death of an individual[.]"

reasonable doubt to establish voluntary manslaughter, nor is it a fact that must be disproven by the State to establish murder *in the absence of some evidence raising an issue as to that fact. If the issue is raised,* then it must be disproven to establish murder, and a reasonable doubt on the issue requires acquittal on the murder charge and allows conviction only for voluntary manslaughter."[5]

572 S.W.2d at 710, 711.  See also *Mullaney v. Wilbur,* 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975).

▮  Thus, when the evidence raises the issue of "sudden passion," its negation becomes an "implied element" of murder. Sudden passion is, in essence, a circumstance surrounding the forbidden conduct, see V.T.C.A. Penal Code, § 1.07(a)(13)(A), the existence of which the State must refute beyond a reasonable doubt.

Article 37.09(1), V.A.C.C.P., reads:

"An offense is a lesser included offense if:

(1) it is established by proof of the same or less than all the facts required to establish the commission of the offense charged[.]"

Should the evidence raise "sudden passion," the absence thereof would constitute a "fact" which is engrafted upon the elements of murder under § 19.02, and must be established beyond a reasonable doubt before a murder conviction can be obtained. A charge on voluntary manslaughter becomes necessary to authorize a conviction in the event a jury finds the State has established all of the elements of § 19.02,

but has failed to establish the "fact" that sudden passion was absent.[6]

▮  Until sudden passion is raised, however, its absence does not become an element of murder, implied or otherwise. See *Braudrick v. State,* supra.  Hence, there is no "fact" the lack of which will reduce the offense to voluntary manslaughter pursuant to Article 37.09(1), supra.  In short, unless there is some evidence of sudden passion in the case, voluntary manslaughter cannot be considered a lesser included offense of murder.[7]

Whether we will treat voluntary manslaughter as a lesser included offense in the instant case, then, is contingent upon whether we find the evidence presented an issue as to sudden passion.  We turn now to an examination of the evidence.

### III.

The State sought to establish intentional murder.  To this end statements were introduced which had been taken from appellant and his girlfriend, Diane Wallace, on the night of the shooting.  Appellant proceeded on a theory of selfdefense.  Wallace testified in his behalf.  As she was the only eyewitness to the killing, we glean our summary of the facts from her testimony, noting inconsistencies with other evidence as we go.

Appellant lived in an apartment located in a house at 5500 Gaston Avenue, in Dallas.  On the evening of January 16, 1982 appellant and Wallace were there.  At about 9:00 o'clock the deceased, Daniel Lopez, arrived and proceeded to kick in the door to appellant's apartment.[8]  Lopez en-

---

5.  Evidently the Court found that the "escalating bar room brawl" reflected in the record was sufficient to raise the issue of sudden passion. 572 S.W.2d at 711, n. 1.

6.  Should the State present a case such that a rational trier of fact *could* find the absence of sudden passion beyond a reasonable doubt, but the jury were nevertheless to convict the defendant of voluntary manslaughter, clearly the rule that proof of the greater offense will sustain a conviction for a lesser included offense would be applicable.  Where the evidence fails to raise the issue of sudden passion, however, applica-

tion of the rule defies logic, since without such evidence voluntary manslaughter cannot be treated as a lesser included offense of murder. See *post.*

7.  To the extent that it may be read to hold that voluntary manslaughter will always constitute a lesser included offense of murder, *Paige v. State,* is overruled.

8.  The statements of appellant and Wallace indicate they were already in the apartment across the hall, where the killing was to occur, when the deceased arrived.

tered the apartment, "slung" a knife across the room and demanded to be told the whereabouts of "Sheila." [9] Lopez threatened to kill appellant if he failed to comply. After also kicking in appellant's bathroom door, Lopez crossed the hall to Billy McDowell's apartment and broke in there.[10] Appellant followed. Wallace listened as Lopez and appellant argued for four or five minutes and then she too crossed the hall. She found Lopez raiding the icebox, and appellant trying to prevent him. Appellant demanded that Lopez leave. Lopez then sat on the couch with the knife in his lap and again threatened to kill appellant.[11] Appellant crossed back to his own apartment and obtained a sawed off shotgun. Wallace encountered appellant on his way back to McDowell's apartment, where he told her, "Don't worry, Diane, I'm not going to shoot him. I'm ... I'm just going to scare him so he'll leave."

Appellant then entered McDowell's apartment and ordered Lopez to leave. Lopez got up from the couch and moved toward the door. Before reaching the door, however, Lopez turned and advanced toward appellant, "walking real fast," and reaching toward his back pocket. Appellant backed up approximately five feet until he was against the wall. Lopez grabbed for the gun. Appellant pulled the trigger, shooting Lopez in the chest.[12] After the shooting appellant appeared scared and told Wallace, "I didn't mean to shoot him, but ... I had to. He might have killed one

of us." Appellant found the knife, with the blade open, on the couch.

There was no testimony from any source to indicate appellant became enraged, resentful or terrified immediately prior to the shooting. Had the evidence shown appellant in fact seemed enraged or terrified before acting, it would have been proper for the trial court to submit the issue to the jury to decide whether Lopez' behavior constituted adequate provocation to produce such a degree of anger or terror, "viewed objectively through the eyes of an ordinary man." *Hobson v. State*, 644 S.W.2d 473 (Tex.Cr.App.1983). The evidence simply does not show that such a passion did arise.

■■■ The fact that the evidence raises the issue of and the court charges on the law of selfdefense (as it did in this cause) will not *entitle* an objecting accused to a charge on voluntary manslaughter unless there is evidence that the killing occurred under the immediate influence of sudden passion arising from an adequate cause. *Daniels v. State*, 645 S.W.2d 459 (Tex.Cr. App.1983); *Medlock v. State*, 591 S.W.2d 485 (Tex.Cr.App.1979). By the same token, just because the evidence may raise an issue of self defense does not mean an accused must be subjected to a charge on voluntary manslaughter over objection, where the evidence does not even suggest he was overcome by a sudden passion and therefore acted while incapable of cool reflection. Unlike our holding in *Humphries v. State*, 615 S.W.2d 737 (Tex.Cr.App.1981),

9. Sheila had been married to Lopez at some point, but the evidence is unclear whether they were still married at the time of the offense.

10. "Gary" and "Sheila" had been staying in McDowell's apartment, but were apparently out for the evening. McDowell testified that he and appellant had agreed to keep a watch over one another's apartments.

11. The existence *vel non* of the knife was a contested issue in the case. Appellant originally told police that Lopez had wielded the knife but later claimed to have found it in Lopez' coat, which appellant put on after the shooting. Appellant also claimed to have thrown the knife into a field before calling police from a 7–11 store to turn himself in. The knife was not recovered.

An investigating officer testified that both appellant and Wallace told him they had seen no knife. Appellant's written statement contains no mention of a knife. Wallace's statement concludes: "I did not see any type of weapon in Danny Lopez's [sic] hand before he was shot." She explained on the stand that this meant she had seen no knife in Lopez' hand at the moment of the shooting. She denied telling police she had not seen Lopez with the knife on the night of the offense.

12. Wallace testified that Lopez was about a half foot from the gun when it fired. The State's experts testified that tests indicated Lopez was approximately four to five feet from the gun at the time he was shot.

here we find no evidence to support the charge given by the court on voluntary manslaughter.

█ We therefore conclude that, on the facts of this case, voluntary manslaughter should not have been charged as a lesser included offense of murder over the objection of the accused. Thus, we cannot resort to the rule that proof of a greater offense will sustain a conviction for the lesser included offense to justify appellant's conviction in this case. Furthermore, because voluntary manslaughter was not available to be charged as a lesser included offense to murder, the evidence must establish every element of § 19.04, as an offense in its own right. Because the evidence did not raise, much less prove beyond a reasonable doubt, the element of sudden passion in this case, appellant's conviction must be reversed and a judgment of acquittal entered. *Burks v. United States*, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978); *Greene v. Massey*, 437 U.S. 19, 98 S.Ct. 2151, 57 L.Ed.2d 15 (1978).[13]

### IV.

█ We hasten to add that this disposition of the case hinges on the fact that

appellant vociferously objected to the inclusion of the voluntary manslaughter charge. Failure to object to the charge when given on the ground that the evidence does not support it would signal acquiescence on the part of the accused in the trial court's judgment that sudden passion was raised.

By invoking the benefit of the lesser included offense charge at trial in not objecting to its submission to the jury,[14] an accused will be estopped from then complaining on appeal that the evidence failed to establish all the elements of the offense.

The judgment of the court of appeals is reversed. The cause is remanded to the trial court with instructions to enter a judgment of acquittal.

TEAGUE, CAMPBELL and WHITE, JJ., concur in result.

ONION, P.J., and W. C. DAVIS, J., dissent.

MILLER, Judge, concurring.

While logic and legislative intent compel me to join the majority opinion, I must reiterate that the relationship between

---

**13.** We are not unmindful that in so holding we place ourselves in "the ludicrous position of acquitting a defendant when there is sufficient evidence in the record that he is guilty of murder." *Daniel v. State*, supra, at 398 (Miller, J., concurring). We invite the Legislature to examine the possibility of enacting amendatory legislation which would make sudden passion an issue of punishment in a prosecution under § 19.02, to be submitted to the jury where raised and requested at the punishment phase of the trial.

Alternatively, it would be constitutionally permissible to modify § 19.02 to make it an affirmative defense to murder that a defendant acted under the immediate influence of sudden passion arising from an adequate cause, and to place the burden of proof on the defendant to establish such an influence by a preponderance of the evidence, pursuant to V.T.C.A. Penal Code, § 2.04(d). Language could then be added to § 19.04 to the effect that the fact that death was caused under the immediate influence of sudden passion arising from an adequate cause constitutes a mitigating circumstance reducing murder to voluntary manslaughter and need not be proved in any prosecution initiated under § 19.04. See *Patterson v. New York*, 432 U.S.

197, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977). Such an amendment would make voluntary manslaughter cognizable and chargeable in any murder prosecution in which sudden passion was raised and requested by the defendant. It would also eliminate the need for the State to prove sudden passion should it choose to proceed on voluntary manslaughter where the evidence supports a conviction under § 19.02. A manslaughter conviction would be *statutorily* authorized even where no evidence was presented as to sudden passion.

Either route would save this Court from having to undergo the legal gymnastics of attempting to force interpretation of § 19.04 as a lesser included offense of § 19.02 under the auspices of Article 37.09(1). This Court is powerless to legislate such a change, however. Under current statutes, a manslaughter conviction simply cannot be obtained absent evidence raising the issue of sudden passion.

**14.** Of course, any "benefit" to appellant in *this* cause must be purely hypothetical. Having been proven an habitual offender, he was destined to receive a life sentence regardless of whether convicted of murder or voluntary manslaughter.

murder and voluntary manslaughter has been hopelessly muddled by the 1974 Penal Code. As I explained in my concurring opinion in *Daniel v. State,* 668 S.W.2d 390, at 399, the legislature, in a vain attempt to ensure the 1973 Penal Code was "dress right, dress",[1] abandoned the tried and true method of delineating murder and voluntary manslaughter that had evolved under the former penal code. Until such action is retracted, neither the bench nor bar nor, most importantly, the citizenry, will be served.

---

1. This being the military command ordering troops in a formation to align themselves in perfectly neat little rows.